TRINIDAD GUERRA ET AL. V. CITY OF SAN ANTONIO.

No. 23.

1. **Authority of Officers Presumed.**—It is well settled in this State that the acts of an officer assuming to discharge an attribute of his office are presumed to be within the scope of his authority unless the contrary be shown.

2. **Construction of Instrument.**—In 1842 Seguin, styling himself *President of the Corporation* of San Antonio, executed an instrument to Dolores Hernandez touching certain city property described therein, allowing her to make proof of the loss of her original grant, by persons who had seen it, and after such proof was made continuing: "I extend the present that it may serve her as á protection in the meantime. I extend it to her in the same manner as to all other persons who find themselves in the same condition as the present case, according to the disposition made by the corporation of this city on the 2d day of the current month." What such disposition was is not shown. There were no granting words. *Held*, such instrument conveyed no title, and no recovery could be had under it in trespass to try title.

APPEAL from Bexar.    Tried below before Hon. G. H. NOONAN.

*L. N. Walthal*, for appellants.—The court erred in rendering judgment for the defendants and against the plaintiffs, because the plaintiffs proved a good and valid conveyance from the city of San Antonio, acting by its then mayor, Juan N. Seguin, to Dolores Hernandez, the ancestor of the plaintiffs, said conveyance dated 15th day of February, 1842; and there was no evidence showing or tending to show that the said Dolores Hernandez or these plaintiffs had ever parted with their title; and because the said city of San Antonio had acknowledged and confirmed the title of the plaintiffs to said property by the paper introduced in evidence, dated the 15th day of February, 1842, signed Juan N. Seguin, president of the corporation.    Wooters v. Hall, 61 Texas, 15; Hardy v. De Leon, 5 Texas, 243; Jones v. Garza, 11 Texas, 207; Hancock v. McKinney, 7 Texas, 442, 443; Carver v. Jackson, 4 Pet., 83, 84; Crane v. Morris & Astor, 6 Pet., 610; Fisk v. Miller, 13 Texas, 225; Hooper v. Hall, 30 Texas, 154; Jackson v. Cole, 4 Cow., 587; Jackson v. Seaman, 3 Johns., 495; Jackson v. Harder, 4 Johns., 202.

*Upson & Bergstrom*, for appellee.—The court did not err in rendering judgment for defendants, because appellants offered no evidence of title in themselves whatever, the instrument executed by Juan N. Seguin not being a conveyance or evidence of title; and as an admission of title by defendant, no authority is shown on the part of Juan N. Seguin to execute the instrument offered in evidence.

COLLARD, ASSOCIATE JUSTCIE.—This is an action of trespass to try title, brought by Jesus Guerra, Trinidad Guerra, and others, as the only heirs of Dolores Hernandez, deceased, against Adolph Scholz, who, holding under a contract of lease from the city of San Antonio, caused it to be made a party defendant.    Plaintiffs agreeing to adopt the contract of the city with him in case they should recover the property, he made no further defense.    The original petition was filed August 31, 1885.

The city answered not guilty, limitation, stale demand, and title by prescription under thirty years possession, and asked for compensation for improvements made in good faith.

A jury was waived, and the court, after trying the cause, gave judgment for defendants, from which plaintiffs have appealed.

Plaintiffs read in evidence an instrument in writing, of date the 15th of February, 1842, upon which their claim to the property is based, as the heirs of Dolores Hernandez.    Said instrument is in the Spanish language, and as translated into the English language, reads as follows:

"*Republic of Texas, County of Bexar.*—In the city of San Antonio, on the 15th day of the month of February of the year one thousand

eight hundred and forty-two, before me, Juan Nepomaceno Seguin, president of the corporation of said city, personally appeared Dolores Hernandez, of this vicinity, who, I certify, is known to me, declared that by virtue of the destruction of the title of acquisition of the lot which she inherited from her deceased mother, in the confusion of the archives of this city in the capture of this place by the army of Texas, she presents as witnesses that they might declare under oath if they know whether her mother had a deed from the government of the ancient Province of Texas, and if they know whether any person had ever instituted suit against them to nullify the quiet, ancient, and legal possession which her predecessors held down to the interested lady of said land; and after having sworn the witnesses, Dn. Ignacio Tejada and Dn. Jose de la Garza, of this vicinity, according to the forms provided by law, they declared, that for many years they had known Dn. Martina Rios, living on the lot hereafter mentioned, that they have seen the title of possession in favor of said lady, extended by the Governor of the Province, Dn. Antonio Cordero, and that they have never seen or heard of any person instituting suit for the nullification of the quiet possession of the aforesaid land, which has been held by said lady down to the interested lady.    And having proven that the part of the lot which belongs to Dn. Maria Dolores Hernandez has a front of twenty-one varas and depth to the river, bounded on the north by a lot of Dn. Candalaria Mansolo, on the west by the river of this city, on the south by lot of Dn. Juana Leal de Tarin, and on the east by the principal street running towards the muralla [rampart wall], and by virtue of the destruction of the original, in the epoch of which the interested lady has furnished a description, I extend the present that it may serve her as a protection in the meantime.    I extend it to her in the same manner as to all other persons who find themselves in the same condition as the present case, according to the disposition made by the corporation of this city on the second day of the current month.

    " City of San Antonio, February 15th, 1842.

                    " JUAN N. SEGUIN, President of the Corporation.

                                    his
                    " JOSE DE LA X GARZA."
                                    mark.

    We also find that Hernandez, mentioned in the foregoing paper, died many years before the filing of this suit, and that plaintiffs are her only heirs.

    The land described in the foregoing instrument embraces the land described in plaintiffs' petition.

    On the 21st day of January, 1875, the plaintiffs herein executed a deed to Ed. Steves to certain land in the city of San Antonio, described therein, in which the following statement is made:

" The present sale includes all houses, outhouses, other buildings, fences, and improvements actually existing on the premises, that have been inherited by the vendors from their deceased parents, Trinidad Guerra and Dolores Hernandez, who had inherited part of the same, and purchased the balance, as it appears from the different deeds of transfer, namely, from a deed delivered on the 15th of February, 1842, by the mayor of the city of San Antonio, said deed duly recorded in the county clerk's office of Bexar County, in book S, No. 2, pages 279 and 280; from another deed of the 7th day of May, 1858, delivered by Simon Ariola, through his attorney in fact."

The land conveyed by this deed is not in controversy.

The defendants read in evidence other deeds, which we think are not important to our decision.

In addition to the foregoing, it was agreed, and we find, that the lot in question was unenclosed up to the time that defendant Scholz took possession thereof; and that there was a spring south of, or at the south end of, said lot near the water's edge, to which the public had access for many years before they were cut off from the use of same by the wall built by defendant Scholz, under his contract with defendant the city of San Antonio. That the property now sued for was a steep bluff, running from the edge of the street to near the water's edge, which, up to the entry by defendant Scholz, under his contract with the city of San Antonio, had never been used by any person except the public for going down to a spring of water near the water's edge. That about 1873 the city, to prevent the street from caving toward the river, built a heavy stone wall between the street and water, leaving a small space between the wall and water and an entrance way to the spring, and thereafter the water in the river receded, leaving the space, together with the stone wall, sufficient for defendant Scholz's buildings. The said wall built by the city being used as Scholz's east wall.

The appellants claim that the court erred in rendering judgment against the plaintiffs, because the city of San Antonio had acknowledged and confirmed the title of the plaintiffs to said property by the paper introduced in evidence, dated the 15th day of February, 1842, signed by Juan N. Seguin, president of the corporation.

This is the principal question to be considered. Plaintiffs rested their title and right to recover upon this instrument, having proved that they were the heirs of Dolores Hernandez.

It is well settled in this State that the acts of an officer assuming to discharge an attribute of office are presumed to be within the scope of his authority, unless the contrary be shown. Jones v. Garza, 11 Texas, 205; Hancock v. McKinney, 7 Texas, 384; Jenkins v. Chambers, 9 Texas, 167; Wooters v. Hall, 61 Texas, 15.

It may be conceded for appellants that the paper executed by Seguin,

president of the corporation of the city of San Antonio, was executed by proper authority for whatever it may be worth, as there is nothing in the record to show that he had no such authority.

We know of no law, and are cited to none, which grants to the mayor or president of any incorporated city or town the official function exercised by Seguin in the execution of the foregoing instrument. He may have had such power, however, by vote of the corporation, by ordinance, or by direction of the duly constituted city authorities.

The instrument discloses that it is extended to the interested party "in the same manner as to all other persons who find themselves in the same condition as the present case, according to the disposition made by the corporation of this city on the second day of the current month"—February, 1842; indicating that the power was granted by the corporation to perform the act as it was done.

But the question is, What did this instrument mean? To what did it entitle the interested party?

It does not disclose its object. It allowed her to make proof of the loss of her original grant by persons who had seen it, and after this proof was made, the paper was extended that it may "serve her as a protection in the meantime," as to all other persons in the same condition.

What protection was this? How long did it last? And was it to be followed by suit, or any other prescribed mode of establishing title?

To answer this, we must know what the corporation had done for such cases, what relief it granted, and on what conditions.

The paper itself does not show it; it was not a deed, a relinquishment, or a grant of title. The most that its terms imply is that it was a temporary protection, but the character of protection is not stated. The common law was in force at the time, by statute of January 20, 1840, which would not construe the instrument into a conveyance, or an absolute and final recognition of title. What the intention and office of the instrument was could only be ascertained by the proceedings authorizing it, by the power conferred upon the officer taking the proof.

It may have been a protection of possession until suit could be brought in the courts to establish title in the regular way; it may have been a protection in the use of houses and improvements for a time; it may have been something else. It is useless to speculate about it.

If it was intended as a guaranty of possession only of houses and improvements, these had been sold to Steves. The land in suit had never been enclosed or reduced to actual possession by plaintiffs. It must be presumed, in the absence of proof, that Hernandez and her heirs have already enjoyed to the fullest extent and exhausted the privileges granted them by the protection.

At all events, we can not say that the instrument was of such a character as would authorize a recovery in trespass to try title against any

one—even the party granting it—since no claim thereunder has been asserted for many years. It purports to be only a temporary protection. Its language must be interpreted under the light of the common law, and only such meaning given to it as it actually signifies. If we had the acts of the corporation upon which the president acted, we might arrive at the intent and meaning of the instrument; without that we can not.

Having failed to show title, plaintiffs could not recover. No other judgment could have been rendered by the court below, and it is affirmed.

*Affirmed.*

Delivered November 1, 1892.

Motion for rehearing refused.