FIELDS–SHEPHERD, Inc., v. ARMITAGE et al.

No. 11347.

Court of Civil Appeals of Texas. Galveston.

Feb. 19, 1942.

Rehearing Denied March 12, 1942.

Weslow, Beadle & Keilin, of Houston, for appellant.

Campbell & Foreman, of Livingston, and Allen, Helm & Jacobs and Bert H. Tunks, all of Houston, for appellees.

MONTEITH, Chief Justice.

This is an appeal from an order of the judge of the County Court at Law of Harris County sustaining a plea of privilege in an action brought by appellant, Field-Shepherd, Incorporated, against appellees, W. R. Armitage and Lester Armitage, for damages for the alleged breach of a contract by appellees to sell and deliver certain lumber to appellant at Houston, Texas.

Appellees duly filed their pleas of privilege to have said suit tried in Polk County, the county of their residence. In due time appellant filed its controverting affidavit in which it embodied its original petition and claimed venue in Harris County under Subdivision 5 of Article 1995, Vernon's Ann.Civ.St.

Upon a hearing before the Court an order was entered sustaining appellees' pleas of privilege and directing the transfer of the case to Polk County. The court held in said order that the instrument upon which appellant based its suit was "not such an instrument as by its terms fixed any obligation whatsoever upon W. R. Armitage" and that appellant's proof was insufficient to establish any liability on the part of Lester Armitage. Appellant appeals from this order. No findings of fact were requested by the parties or filed by the trial court.

Appellant is a Texas corporation. It is domiciled in Harris County, Texas. W. к. Armitage owned and operated a saw mill at Goodrich, in Polk County, Texas. Lester Armitage is the son of W. R. Armitage. Both reside in Polk County. On September 11, 1940, Lester Armitage, as agent for his father, signed the name of W. R. Armitage to the following instrument, which was later delivered to appellant:

"We the undersigned agree to ship the following lumber to Fields, Shepherd, Houston, Texas, at the prices per Thousand feet, listed F. O. B. Houston.

up to 10,000 ft. 2x4—8 #2S4S at 20.00 per M.

up to 15,000 ft. 2x4–16–18–20–16s at 22.00 18 & 20 at 23.00

up to 10,000 ft. 2x10–16 at 26.00

up to 20,000 ft. 2x10–14 at 27.00

up to 2,000 ft. 1x8–105 "'D" Siding 30.00

up to 20,000 ft. 1–1/4x6 #1 Rgh Green 30.00

"Shipment any time within 90 days.

"W. R. Armitage."

On September 17, 1940, appellant wrote W. R. Armitage the following letter:

"September 17, 1940.

"W. R. Armitage,

"Goodrich, Texas.

"Dear Sir:

"We have copy of order our Mr. Foster gave you to be delivered within the next

ninety days, which is as follows: F.O.B. Houston, Texas.

Up to 10,000 feet 2x4–8 #2 S4S at 20.00
" " 15,000 " 2x4–16 " " 22.00
18 & 20 23.00
" " 10,000 " 2x10–16 #2 S4S 26.00
" " 20,000 " 2x10–14 " " 27.00
" " 2,000 " 1x8– #105 "D"
Siding 30.00
" " 20,000 " 5/4x6 #1 Rgh.
Green 30.00

"We are also enclosing copy you made up. We would like for you to bring us in some of the 2x4–8 & 16 as soon as possible. You can top out the load with 5/4 x 6 green.
"Yours truly,
"Fields-Shepherd, Inc.
"By Howard G. Fields."

It is admitted that a part of the lumber listed in appellee's offer of September 11th was shipped to appellant by appellee, W. R. Armitage, and that appellant paid him the price specified in the offer therefor.

■ Under this record, appellant's cause of action is based upon the two instruments above referred to. In order for it to prevail herein it must have established at the hearing on said pleas of privilege that said instruments, in themselves, constituted a binding written contract wherein appellee, W. R. Armitage, was obligated to ship the maximum amount of lumber specified in said offer to appellant, at Houston, Texas, and that appellant was bound thereby to purchase that amount of lumber at the prices therein stated. Camp v. Screen Broadcasts Inc., Tex.Civ.App., 118 S.W.2d 398; Lopez v. Cantu, Tex.Civ. App., 130 S.W.2d 345; Quinn v. Johnston, Tex.Civ.App., 122 S.W.2d 266.

Subdivision 5 of Article 1995, Vernon's Ann.Civ.Stat., provides:

"5. Contract in Writing.—If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

■ It is a well settled rule that a contract of sale must describe the property to be sold with a reasonable degree of definiteness, and that contracts for the sale of fungible goods must either fix the amounts thereof with certainty or those amounts must be ascertainable from extrinsic matters referred to in the contract. 37 Tex.Jur. 148, § 46.

In 23 R.C.L. 262, § 79, it is said: "The general rule requiring certainty in contracts to render them valid and binding is applicable to contracts of sale and it is elementary that the property must be so described or designated that the description may, by the aid of extrinsic evidence of the surrounding facts and circumstances, be applied to some particular property."

An application of this rule is found in the case of Dale Oil & Refining Co. v. City of Tulia, Tex.Civ.App., 25 S.W.2d 671, wherein one party agreed to buy and the other to sell an amount of oil designated, by fixing both a maximum and a minimum amount. In applying the rule, the court held that the contract was enforceable only as to the minimum amount specified.

In the case of Houston & T. C. Ry. Co. v. Mitchell, 1873, 38 Tex. 85, one Mitchell proposed to cut and place on ricks for the railway company *not to exceed* (emphasis ours) two hundred tons of prairie hay at a certain price. This proposal was accepted by the Railway Company. After Mitchell had cut and delivered twenty-five tons of the hay, he was notified by the Railway Company that it did not want to buy any more hay. Mitchell, nevertheless, delivered the entire 200 tons. The trial court awarded recovery of the full contract price for the entire 200 tons. In reversing the judgment of the trial court, the Supreme Court held that the plaintiff was entitled to recover for any amount of hay cut under the contract before notice to Mitchell by the company of its refusal to receive any more, but that the contract was not mutual for the reason that Mitchell was not bound under the contract to cut and put up any particular number of tons of hay for the appellant; that, under the contract, he could, if he desired, put up 200 tons; but that if he quit cutting when he had cut one ton, the appellant could not have compelled him to cut any more, nor could damages have been recovered for the breach.

While the plaintiff in the Mitchell case was the seller whose position was comparable to that of the appellees in this case, the court, in holding that the agreement was not enforceable by him because it would not have been enforceable against him, supports the position of appellees herein that the contract on which appellant's case is based is unenforceable

988

against them for the reason that it was not enforceable against appellant.

█ It is obvious from a careful reading of appellee's offer of September 11th that it cannot, standing by itself, be construed as a written obligation. It is only an offer by W. R. Armitage to ship lumber to appellant up to a certain amount upon appellant's implied promise to pay therefor. In order for this offer to constitute the basis of a contract, appellant's letter to W. R. Armitage of September 17th must have contained a binding promise to buy a *certain* amount of lumber from appellee at the price at which it was offered. An examination of this letter fails to show any language which can be so construed. It simply stated that appellant had a copy of appellee's offer. It contained a request that a part of the lumber be shipped as soon as possible. In offering an amount not specifically fixed but limited by certain figures, appellee left to appellant the election as to the amount. Appellant was obligated to buy from appellee either no lumber, or an amount of lumber not greater than the maximum amount specified, and appellee was not obligated under either instrument to ship any definite amount of lumber to appellant.

It follows from above conclusions that the judgment of the trial court in sustaining appellees' plea of privilege and ordering the case transferred to Polk County must be, in all things, affirmed.

Affirmed.